**ALLSTATE INSURANCE COMPANY,**
Petitioner,

v.

**Gloria HUIZAR, Respondent.**

No. 01SC9.

Supreme Court of Colorado,
En Banc.

June 10, 2002.

Steven C. Choquette, Holland & Hart, L.L.P., Denver, Colorado, Attorney for Petitioner.

Lloyd C. Kordick, Colorado Springs, Colorado, Joseph J. Archuleta, Denver, Colorado, Attorneys for Respondent.

J. Gregory Walta, Colorado Springs, Colorado, Attorneys for Amicus Curiae, Colorado Trial Lawyers Association.

Justice COATS delivered the Opinion of the Court.

Allstate Insurance Company petitioned for review of the judgment of the court of appeals in *Huizar v. Allstate Insurance Co.*, 32 P.3d 540 (Colo.App.2001) (*Huizar II*), affirming an award of attorney fees in favor of Gloria Huizar. The district court awarded attorney fees for Huizar's successful challenge to a provision of the insurance contract that allowed Allstate to litigate de novo the same issues that had already been resolved by arbitration. The court of appeals found that an award of attorney fees was permitted by the express terms of the contract and, in any event, by the public policy considerations articulated by this court in declaring the de novo trial provision of the insurance contract void as against public policy. *See Huizar v. Allstate Ins. Co.*, 952 P.2d 342 (Colo.1998) (*Huizar I*). Because we find that the contract cannot be construed to permit an award of attorney fees under the circumstances of this case and neither the statutes nor policy considerations upon which we relied in *Huizar I* create a new exception to the rule that each party must bear its own attorney fees, the judgment of the court of appeals is reversed and the case is remanded for further proceedings.

I.

The dispute resulting in the attorney fees award at issue in this case grew out of a one-car accident in which Gloria Huizar was injured. Ms. Huizar suffered head and neck injuries when the automobile in which she was being driven by her neighbor crashed into a curb. Allstate Insurance Company, which was Huizar's insurer, paid her medical expenses pursuant to the personal injury protection coverage of her policy. Because her neighbor was uninsured, however, Huizar also looked to Allstate for additional coverage under the uninsured motorist provisions of her policy.

When the parties were unable to agree on the amount of benefits she should receive, Huizar invoked a provision in the policy that allowed either party to call for arbitration of claim disputes. The arbiter awarded Huizar $30,000, plus interest and costs. Allstate then sought a trial de novo, permitted by the policy whenever an arbitration award exceeded the $25,000 minimum liability coverage required by section 10–4–609, 3 C.R.S. (1997)(incorporating the minimum limits as set forth in the Financial Responsibility Act, § 42–7–103, 11 C.R.S. (1997)). In response, Huizar moved to dismiss the action and requested that the trial court docket the arbiter's award.

The trial court concluded that the provision permitting a trial de novo violated public policy and was void. It therefore confirmed the arbitration award and entered judgment for Ms. Huizar for the $30,000, interest, and costs. On appeal, the court of appeals reversed. *Huizar v. Allstate Ins. Co.*, 932 P.2d 839 (Colo.App.1996). This court granted Huizar's petition for writ of certiorari and reversed the judgment of the court of appeals, holding that while no single statement of public policy contained in any statutory or constitutional law directly prohibited the trial de novo clause, by invalidating arbitration, which had already been completed, it needlessly increased costs, diluted uninsured motorist coverage, impeded timely resolution of claims, unreasonably burdened the right of access to the courts, and rendered arbitration a less effective means of dispute resolution, violating the public policy of Colorado favoring fair, adequate, and timely resolution of uninsured motorist claims. *Huizar I*, 952 P.2d at 345.

On remand, although the trial court substantially reduced Huizar's request as unreasonable, it awarded her attorney fees of $35,000 for successfully challenging the validity of the trial de novo provision and an additional $4,850 for successfully litigating the attorney fees issue. While the trial court characterized Allstate's actions as attempting to avoid its policy obligations and noted the irony that would result from disallowing an award of attorney fees incurred in winning "this public policy fight," the trial court concluded only that Huizar was entitled to fees by the express provisions of the policy obligating Allstate to defend an insured person and pay reasonable expenses incurred at Allstate's request.

On direct appeal, the court of appeals affirmed, not only agreeing with the trial court's construction of the contract but also holding that the public policy considerations articulated by this court in *Huizar I* "should be interpreted to authorize the award of fees under the limited circumstances of this case." *See Huizar II*, 32 P.3d at 548. Allstate sought further review of that decision by this court.[1]

## II.

In the absence of an express statute, court rule, or private contract to the contrary, attorney fees generally are not recoverable by the prevailing party in a contract or tort action. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1287 (Colo.1996); *Bunnett v. Smallwood*, 793 P.2d 157, 160 (Colo.1990). This reasoning is based on the so-called American Rule, which requires each party in a lawsuit to bear its own legal expenses. *Bernhard*, 915 P.2d at 1287.

The rationale supporting the rule includes a number of broad policy considerations. First, since litigation is at best uncertain, one should not be penalized for merely defending or prosecuting a lawsuit. Second, requiring each party to be responsible for its own fees is thought to encourage settlement. Moreover, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. *Cf. Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235, 236–39, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964) (Goldberg, J., concurring). Additionally, the litigation and proof of what constitutes reasonable attorney's fees would pose a substantial burden for judicial administration. *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); *Oelrichs v. Spain*, 82 U.S. (15 Wall.) 211, 21 L.Ed. 43 (1872); *Bernhard*, 915 P.2d at 1287.

---

1. We granted certiorari to answer the following questions:

    1) Whether the court of appeals' majority violates Colorado law by applying a provision from an Allstate automobile insurance policy's third-party liability coverage Part to the policy's wholly separate, first-party uninsured/underinsured motorist ("UM/UIM")

Part in order to award respondent's attorney fees in a UM/UIM dispute.

    2) Whether the court of appeals erred in interpreting this court's decision in *Huizar v. Allstate Ins. Co.*, 952 P.2d 342 (Colo.1998) and Colo.Rev.Stat. § 10–4–609 as creating a public policy or statutory exception to the American Rule.

## A.

■ Even the general rule requiring each party in a contract action to bear its own legal expenses permits the parties to agree otherwise by express provision in the contract. *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1191 (Colo.2001). Both the trial court and the court of appeals found such an express provision for the recovery by Huizar of attorney fees in language of the policy obligating the insurance company to "defend an insured person sued as the result of a covered auto accident" and to pay as part of that defense any "other reasonable expenses incurred at [the insurance company's] request." The court of appeals analogized Allstate's exercise of its trial de novo right under the uninsured motorist provisions of the policy to a suit against Huizar for declaratory judgment. It therefore found that Allstate was obligated by the terms of the policy to defend Huizar against its own "suit" and to pay her attorney fees as reasonable expenses incurred at Allstate's request.

■ The interpretation of an insurance policy is a matter of law, which an appellate court reviews de novo. *See Union Ins. Co. v. Houtz*, 883 P.2d 1057, 1061 (Colo.1994). An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Chacon v. Am. Family Mut. Ins. Co.*, 788 P.2d 748, 750 (Colo.1990). The words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided. *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo.1990). Further, the meaning of a contract must be determined by examination of the entire instrument, and not by viewing clauses or phrases in isolation. *U.S. Fid. & Guar. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo.1992)(citing *Kuta v. Joint Dist. No. 50(J)*, 799 P.2d 379, 382 (Colo.1990)).

Following these principles, the language of the insurance policy at issue here cannot be reasonably construed to obligate the insurer to defend the insured against a claim of the insurer itself, much less to pay the insured's legal expenses to challenge the validity of the provisions of the contract. It is clear from the organization of the policy and the location of its reference to payment of expenses, the fact that other sections of the policy contain different provisions concerning attorney fees, and the context and express descriptions of the insurer's obligations that the insurer's obligation to defend extends only to suits by third parties with claims against the insured person.

■ Organizationally, the contract is divided into a number of "Parts," each dealing with a different type of coverage, and it includes a separate section devoted exclusively to "General Provisions." The language relied on by both lower courts does not appear in any generally applicable provision of the policy but in "Part 1," entitled "Automobile Liability Insurance," which is devoted specifically to an insured person's liability for bodily injury or destruction of property. Other "Parts" of the policy are expressly devoted to personal injury suffered by the insured, damage to the insured's vehicle, and uninsured or underinsured motorist coverage. When a contract is organized into separate parts, a provision or definition found in one part or section of the contract is not necessarily intended to apply to other parts. *See Int'l Technical Instruments, Inc. v. Eng'g Measurements Co.*, 678 P.2d 558, 561–62 (Colo.App.1983)(concluding that where clause in question appeared only under one particular heading of contract and nowhere else, its applicability was properly limited to the particular heading); *Grant v. State Farm Fire and Cas. Co.*, 638 So.2d 936 (Fla.1994)(if the definition provided in one section of the policy is inapplicable to the coverage at issue in another section, a court may be compelled to search elsewhere for a sensible and appropriate definition); *see generally* 16 Samuel Williston, *A Treatise On the Law of Contracts* § 49:14, at 79 (Richard A. Lord ed., 4th ed.1990).

Nothing in either the context or specific language of the insurer's promise to defend and pay reasonable expenses suggests any intent for it to apply beyond the "Part" of the contract in which it is found. The contract is organized according to different coverages and the respective obligations of the

parties with regard to each. Those "Parts" of the contract dealing with Personal Injury Protection, for example, separately provide for arbitration and impose a different obligation on the insured to pay attorney fees in limited, specific circumstances. The trial de novo provision of "Part 5" of the contract, treating uninsured and underinsured motorist coverage, was clearly not intended to be governed by the requirement for the insured to defend against liability suits, as evidenced by its own requirement that each party bear its own costs and attorney fees. Perhaps most indicative of its intended scope, the language obligating Allstate to pay other reasonable expenses incurred at its request is one of several obligations of the insurer limited by the clause, "When we defend an insured person *under this Part*" (emphasis added).

From both the context and plain meaning of the terms, it is clear that the insurer's duty to defend described in "Part 1" of the contract, the Part dealing with liability for personal injury and property damage, is intended to apply only to suits against the insured person by third parties. Apart from the fact that the insured's coverage for his own personal injury and property damage are treated elsewhere in the contract, the term liability insurance is generally used to refer to the insured's liability to a third party. *See Black's Law Dictionary* 806 (7th ed. 1999) (Liability insurance is "[a]n agreement to cover a loss resulting from one's liability to a third party.... The insured's claim under the policy arises once the insured's liability to a third party has been asserted.") If it were not sufficiently clear from the title and scope of "Part 1" alone that a defense against a claim of liability necessarily refers only to a suit by a third person, the policy provision specifically describes the defense Allstate must provide as one in which Allstate "will choose the counsel," and one in which Allstate "may settle any claim or suit." These provisions are simply incompatible with any intent to require the insurance company to defend or pay attorney fees to the insured in an action by or against the insurance company itself.

Despite the clear difference in bargaining power between insurance companies and individuals seeking insurance coverage, *see Huizar I,* 952 P.2d at 344, insurance policies are contracts, which must be construed according to their plain meaning and well-settled principles of contract interpretation. *Chacon,* 788 P.2d at 750. Insurance contracts may be subject to scrutiny for provisions that unduly compromise an insured's interests and are therefore rendered unenforceable, *Huizar I,* 952 P.2d at 344, but clear and unambiguous provisions cannot simply be rewritten by the courts. *See Kansas City Life Ins. Co. v. Pettit,* 99 Colo. 268, 61 P.2d 1027 (1936)(court cannot make a new contract in lieu of one originally entered into by parties themselves, but court must give effect to natural meaning of language actually used). The insurance contract at issue here does not contain any express exception to the well-established rule that each party must bear its own legal expenses that is applicable to Ms. Huizar's successful challenge to the trial de novo provision of the contract.

### B.

Without regard to the express provisions of the contract, the court of appeals also held that the public policy considerations upon which this court found the trial de novo clause void in *Huizar I* justify an award of attorney fees that would otherwise absorb all of the uninsured motorist monies awarded by arbitration. Although substantially agreeing with this outcome, one specially concurring panel member would have found a statutory exception to the general rule that each party pay its own legal expenses "because of the public policy the supreme court associated with § 10–4–609," which requires insurance companies to provide the same coverage that an insured could collect if the owner or driver were insured as required by law. Both opinions, however, would limit the exception to the circumstances of this case.

Colorado does recognize several exceptions to the general rule that attorney fees are not recoverable by the prevailing party in the absence of an express statute,

court rule, or private contract to the contrary,[2] but we have previously made clear that the creation of a new exception is "a function better addressed by the legislative than the judicial branch of government." *Bernhard,* 915 P.2d at 1287–88. Numerous statutes already expressly provide for attorney fees awards, *see Ramos v. Lamm,* 539 F.Supp. 730, 757 app. B (D.Colo.1982)(listing eighty-five such statutes), *aff'd in part, rev'd in part,* (713 F.2d 546 (10th Cir.1983)), but an exception to the general rule against fee awards will not be inferred from general provisions requiring compensation that do not explicitly address attorney fees. *See Leadville Water Co. v. Parkville Water Dist.,* 164 Colo. 362, 365, 436 P.2d 659, 660 (1967)(declining to interpret "just compensation" as applied to eminent domain law to include attorney fees in absence of statute expressly providing it); *see also City of Holyoke v. Schlachter Farms, R.L.L.P.,* 22 P.3d 960, 961 (Colo.App.2001). Apart from statutes expressly allowing attorney fee awards in particular classes of actions, the legislature has also provided for the recovery of attorney fees incurred as a result of unjustified litigation, but only upon a showing that the litigation was "substantially frivolous, substantially groundless, or substantially vexatious". § 13–17–101, 5 C.R.S. (2001).

On its face, section 10–4–609 makes absolutely no reference to attorney fees, and nothing in the rationale of *Huizar I* indicates a retreat from *Bernhard,* 915 P.2d at 1288 (new exceptions better left to legislature), or suggests the discovery of a legislative intent to require that uninsured motorist coverage guarantee recovery, over and above legitimate legal expenses. The result in *Huizar I* was dictated by a combination of legislatively expressed policy considerations, including that an uninsured motorist award not be needlessly diluted by expenses incurred solely at the pleasure of the insurer. Nowhere did we suggest that legal expenses required

to establish an uninsured motorist award, or for that matter the invalidity of policy provisions, were always needless or evidence of an impermissible attempt to dilute the award. Quite the contrary, we made clear that the additional expenses, including attorney fees, incurred as the result of the trial de novo provision of the policy, needlessly diluted an arbitration award because they were caused without regard to the existence of reasonable grounds for believing the earlier award to be erroneous. *Huizar I,* 952 P.2d at 347–48 ("Because nothing survived from the arbitration, the proceeding was reduced to a meaningless exercise or, at best, a non-binding guide to evaluating the claim for settlement purposes.")

By confining its new exception to the "limited," *Huizar II,* 32 P.3d at 548, or "unique," *id.* at 550 (Dailey, J. specially concurring), circumstances of this case, rather than suggesting an exception of general applicability, the court of appeals strongly implies a result dictated by the equities of the case. We have rejected awards of attorney fees on the basis of the equities of individual cases in the past, *see Bunnett,* 793 P.2d at 161, and although the result may seem ironic, the equities or circumstances of this case do not compel an exception to the American rule. In particular, the ultimate outcome of litigation, including a determination that a contract provision is void as against public policy, does not by itself demonstrate that the litigation was unnecessary. To the contrary, extensive legal expenses may well be as indicative of the difficulty and closeness of the issues being litigated as any improper motive or tactic of an opponent. To the extent that forcing an opponent to incur substantial legal expenses and ultimately suffering defeat are evidence of groundless and vexatious proceedings, they are already accounted for by statute and need no further exception to the

---

2. Exceptions to the American rule recognized in Colorado include those based on: the "common fund" doctrine, *County Workers Comp. Pool v. Davis,* 817 P.2d 521 (Colo.1991); a party's bad faith and lack of candor in dealing with the court, *Johnston v. Dist. Court,* 196 Colo. 1, 580 P.2d 798 (1978); breach of fiduciary duty or breach of trust, *Buder v. Sartore,* 774 P.2d 1383 (Colo.1989); *Heller v. First Nat'l Bank, N.A.,* 657 P.2d 992 (Colo.App.1982); and a party's wrongful act proximately causing the wronged party to become engaged in litigation with others, *Publix Cab Co. v. Colo. Nat'l Bank,* 139 Colo. 205, 338 P.2d 702 (1959). *See Bernhard,* 915 P.2d at 1287 n. 3.

general rule. *See* § 13–17–101, 5 C.R.S. (2001).

In this case, litigation over the validity of the previously untested trial de novo provision of the insurance policy was clearly not groundless. Of the ten judges considering the issue, five found no violation of public policy,[3] and but for the final, discretionary review in this court, Ms. Huizar would not have succeeded at all. Despite having wide latitude in the matter, *see* § 13–17–101(1), the trial court did not find that any particular behavior of Allstate violated section 13–17–101. It merely agreed with Huizar that the express provisions of the contract entitled her to the award. In the absence of findings that Allstate's reliance on the provisions of its insurance policy was substantially frivolous, groundless, or vexatious, no statutory or existing policy exception to the general rule permits an award of attorney fees.

**3.** After the trial judge declared the provision void, a three-judge panel of the court of appeals

## III.

Because the specific language of the insurance contract cannot be interpreted to permit an award of attorney fees under the circumstances of this case and neither the statutes nor legislatively expressed policy considerations relied upon in *Huizar I* create an exception to the rule that each party in a contract action bear its own legal expenses, the judgment of the court of appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

reversed, only to have the trial judge affirmed by this court in a 4–2 decision.