**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 4/23/96**

**TENTH CIRCUIT**

─────────────────────────

| | |
|---|---|
| BYRON S. SELLERS, | ) |
| | ) |
|     Plaintiff-Counter-Defendant-Appellant, | ) |
| | ) |
| v. | )    No. 95-1257 |
| | ) |
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
|     Defendant-Counter-Claimant-Appellee. | ) |

─────────────────────────

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 94-S-1152)**

─────────────────────────

Randal R. Kelly (Brad R. Irwin of Irwin & Boesen with him on the briefs), Denver, Colorado, for Plaintiff-Counter-Defendant-Appellant.

Sherwin V. Wittman II of Wittman & McCord, Colorado Springs, Colorado (Cynthia J. Hyman, Denver, Colorado, with him on the brief) for Defendant-Counter-Claimant-Appellee.

─────────────────────────

Before **TACHA, BRORBY** and **EBEL**, Circuit Judges.

─────────────────────────

**BRORBY**, Circuit Judge.

─────────────────────────

Byron S. Sellers appeals the district court's grant of summary judgment in favor of defendant Allstate Insurance Company ("Allstate") on his breach of contract claims. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

On May 21, 1991, Mr. Sellers was injured in a noncontact motorcycle accident with an unidentified automobile while on duty as a Jefferson County Deputy Sheriff. At the time of the accident, Mr. Sellers had an insurance policy with Allstate on a Dodge he owned which provided for uninsured motorist coverage up to $50,000. Jefferson County had a business insurance policy with United States Fire Insurance Company ("U.S. Fire") which also provided for uninsured motorist coverage up to $50,000. Mr. Sellers had additional uninsured motorist coverage on a personal motorcycle with Colonial Insurance Company ("Colonial") for up to $25,000. As compensation for his injuries, Mr. Sellers has recovered $90,000 from U.S. Fire and $25,000 from Colonial.

In late April 1992, Mr. Sellers mailed Allstate notice of the accident. For the following two years a series of correspondences took place between Mr. Sellers, his attorneys and Allstate representatives regarding the type and amount of Allstate's liability. Finally, in April 1994, Mr. Sellers filed suit against Allstate alleging breach of contract due to Allstate's failure to arbitrate and/or pay his claim. Allstate filed a motion for summary judgment alleging the policy issued by U.S. Fire prevented any claims against Allstate because of an anti-stacking provision contained in Mr. Sellers's policy with Allstate. In response, Mr. Sellers argued the anti-stacking clause of the Allstate policy was rendered void by Colo. Rev. Stat. § 10-4-609(2) or in the alternative Allstate was prohibited from denying coverage under a waiver or estoppel theory. The district court granted Allstate's motion for summary judgment. Mr. Sellers appeals raising two issues: (1) the district court erred in determining Allstate's anti-stacking policy provision was not rendered void by Colo. Rev. Stat. § 10-4-609(2), and (2) the district court erred in finding no genuine issues of material fact existed with respect to Allstate's waiver of its stacking argument or estoppel to assert that argument.

2

I

"We review the grant or denial of a motion for summary judgment de novo applying the same legal standard as the district court pursuant to Fed. R. Civ. P. 56(c)." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995). In so doing, we examine the factual record and all reasonable inferences that can be drawn therefrom in the light most favorable to the non-moving party. *Id.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

We will first address the applicability of a clause contained in Mr. Sellers' insurance contract with Allstate which provides:

> If the insured person was in, on, getting into or out of a vehicle which is insured for this coverage under another policy, coverage under this policy will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit, we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

Mr. Sellers does not dispute that the County-issued motorcycle he was riding at the time of the accident was insured by U.S. Fire for $50,000 -- the same liability limit provided for in his policy with Allstate on his personal vehicle. Because the amount of liability under the Allstate policy does not exceed the amount of liability under the U.S. Fire policy, Allstate claims it has no liability to Mr. Sellers. Mr. Sellers argues, however, that his claim against Allstate did not arise until after Allstate breached its contractual obligation to arbitrate in 1993 and thus the contract's anti-stacking provision is invalid due to the Colorado Legislature's Amendment to 10-4-609(2) in 1992 which provides in

3

pertinent part:

> A policy may contain provisions which prohibit stacking the limits of more than one uninsured motorist coverage policy as provided in this section, if such provisions are included in a single policy covering multiple vehicles or in multiple policies issued by one insurer or an affiliated insurer, under common ownership or management, to an insured or to a resident relative of such insured. Such provisions shall not prohibit stacking of the uninsured or underinsured portions of a policy issued to an insured and a separate policy covering the insured which was not issued to an insured or a resident relative.

Mr. Sellers also claims the amendment's anti-stacking provision is not subject to the general rule that statutes are presumed to apply prospectively because the amendment merely clarified the intent of the preexisting statute and thus should be applied retroactively. The district court found the anti-stacking provision was valid because Mr. Sellers was legally entitled to recover for his injuries on the date of the accident, which was prior to the statutory amendment. Furthermore, the district court noted that prior to the amendment anti-stacking provisions were allowed in Colorado and that "[a]bsent any evidence to the contrary, Colorado statutes apply prospectively only."

As a federal court sitting in diversity jurisdiction, we apply the law of the state where the claim was brought. *Budd v. American Excess Ins. Co.*, 928 F.2d 344, 346 (10th Cir. 1991). In Colorado, insurance policies are generally interpreted under the law of the state where the policy was issued. *Blue Cross of Western New York v. Bukulmez*, 736 P.2d 834, 841 (Colo. 1987). Our duty is thus to ascertain and "apply the most recent statement of state law by the state's highest court." *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 513 (10th Cir. 1994). Although we are not required to follow the dictates of an intermediate state appellate court, we may view such a decision as persuasive as to how the state supreme court might rule. *Perlmutter v. United States Gypsum Co.*, 4 F.3d 864, 869

n.2 (10th Cir. 1993).

The Colorado Supreme Court has not directly addressed this issue, but we find a recent Colorado Court of Appeals opinion persuasive authority regarding how this issue should be decided. In *Farmers Ins. Exch. v. Walther*, 902 P.2d 930, 936 (Colo. Ct. App. 1995), the court rejected the plaintiff's contention that the General Assembly's 1992 amendment to § 10-4-609(2) applied to an insurance policy's anti-stacking clause where "[t]he amendment was enacted after the policy here was issued and after the accident upon which the claim was based." In the case at bar, both the issuance of the policy and the accident also preceded the amendment. Therefore, according to the only Colorado case to deal directly with this issue, both Mr. Sellers' arguments fail because the 1992 amendment to 10-4-609(2) cannot serve to retroactively invalidate an insurance policy's anti-stacking provision which was in effect prior to the amendment where the accident for which he seeks recovery also occurred prior to the amendment.

II

Next, Mr. Sellers argues the district court erred in finding no material facts existed as to the applicability of the doctrines of waiver and estoppel. Mr. Sellers, however, fails to identify a single factual dispute in support of his position, nor are we aware of any material factual dispute. In reviewing a motion for summary judgment where there are no material facts in dispute we look to see whether the district court correctly applied the substantive law. *Wolf*, 50 F.3d at 796. As we noted above, because this is a diversity action we look to the laws of Colorado.

"Waiver is the intentional relinquishment of a known right or privilege." *Department of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984). Waiver can be established either through an express statement or it can be implied through a party's conduct. *Id.* In order for estoppel to apply four elements must be established: "the party to be estopped must know the facts; this party must intend that his or her conduct be acted on or must so act that the party asserting the estoppel has a right to believe the other party's conduct is so intended; the party asserting the estoppel must be ignorant of the true facts; and the party asserting the estoppel must rely on the other party's conduct to its injury." *Id.; Johnson v. Industrial Comm'n of Colorado*, 761 P.2d 1140, 1146 (Colo. 1988).

Mr. Sellers maintains that by continuing to discuss the scope of its liability with him, while preventing him from obtaining arbitration, Allstate either waived its right to challenge its liability altogether or should be estopped from doing so because it knew the relevant facts and he relied on their assurances to his detriment in the form of drawn out and expensive legal proceedings. The district court held that "[e]ven assuming the existence of facts sufficient to support a waiver and/or estoppel argument, it is well established that these doctrines cannot be used in order to create coverage where none previously existed under the terms of the policy." The district court then noted that because Allstate merely provided excess coverage up to $50,000, and Mr. Sellers had already received $50,000 from the primary insurer "no coverage exists under the Allstate policy and the doctrines of waiver and estoppel cannot be used to create coverage."

Mr. Sellers argues the district court erred in its application of Colorado law because he was not attempting to use waiver or estoppel to create coverage but merely to enforce coverage the

6

Allstate policy already provided. We disagree and find the district court was correct in its interpretation and application of Colorado law. In *Hartford Live Stock Ins. Co. v. Phillips*, 372 P.2d 740, 742 (Colo. 1962), the court quoted 29A Am. Jur. § 1135 in holding that "while an insurer may be estopped by its conduct or its knowledge from insisting upon a forfeiture of a policy, the coverage, or restrictions on the coverage, cannot be extended by the doctrine of waiver or estoppel." Mr. Sellers is seeking to extend the coverage of Allstate's policy. Allstate's policy specifically states that it provides excess coverage in cases where the vehicle involved is insured by another policy. Mr. Sellers does not dispute that U.S. Fire was the primary insurer of the motorcycle involved in the accident. Allstate's coverage was thus limited to provide whatever deficit existed between the amount U.S. Fire paid Mr. Sellers and its policy's $50,000 limit. In this case, U.S. Fire paid Mr. Sellers $90,000 as the result of a lawsuit settlement thus leaving Allstate with no liability to Mr. Sellers. To allow Mr. Sellers to use the doctrine of waiver or estoppel to recover anything from Allstate would be an illegitimate expansion upon the express coverage of the policy. *See also Continental Casualty Co. v. Empire Casualty Co.*, 713 P.2d 384, 390 (Colo. Ct. App. 1985) (holding the doctrine of waiver may not be used to establish or expand insurance coverage where none existed under the policy), *aff'd in part & rev'd in part on other grounds*, 764 P.2d 1191 (Colo. 1988); *Western Ins. Co. v. Cimarron Pipe Line Constr., Inc.*, 748 F.2d 1397, 1399 (10th Cir. 1984) (noting well settled view that doctrines of waiver and estoppel cannot be used to extend coverage of an insurance policy).

For the reasons stated above the judgment of the district court is **AFFIRMED**.