The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
November 14, 2019

## 2019COA169

**No. 18CA1374, 18CA2005, *Morley v. United States Automobile Association* — Insurance — Property and Casualty Insurance — Homeowner's Insurance — Exclusions — Surface Water**

In this insurance coverage case, a division of the court of appeals considers whether a "surface water" exclusion in an all-risk insurance policy precludes the plaintiffs' claims as a matter of law when the plaintiffs allege that the interior of their home was damaged when precipitation entered the home directly through holes in the roof caused by hail damage.  Applying the unambiguous definition of "surface water" articulated in *Heller v. Fire Insurance Exchange*, 800 P.2d 1006, 1008 (Colo. 1990), the division concludes that when precipitation falls or leaks into the insured's dwelling through holes in a roof damaged by hail (or some other covered peril) — rather than running off the roof and behaving

as one would expect water intercepted by a roof to behave — it does not fall within the plain meaning of the term "surface water" because it was never water "lying or flowing naturally on the earth's surface."

In reaching its conclusion, the division distinguishes this case from *Martinez v. American Family Mutual Insurance Co.*, 2017 COA 15. While the division agrees with *Martinez* that man-made surfaces can intercept precipitation and generate surface water, it rejects the insurer's contention that *Martinez* stands for the broad proposition that the moment water falling from the sky touches a roof or other man-made surface it becomes "surface water."

Because the district court erred in concluding, as a matter of law, that the plaintiffs' claims are barred by the surface water exclusion in their policy, the division reverses the district court's entry of summary judgment and its award of costs in favor of the insurer.

Further, because there are genuine disputes of material fact, the division declines to affirm the district court's entry of summary judgment on the insurer's alternative argument that a fraud exemption in the policy precludes the plaintiffs' claims.

COLORADO COURT OF APPEALS      **2019COA169**

Court of Appeals Nos. 18CA1374 & 18CA2005
Pueblo County District Court No. 17CV30403
Honorable Deborah R. Eyler, Judge

Richard Morley and Connie Morley,

Plaintiffs-Appellants,

v.

United Services Automobile Association,

Defendant-Appellee.

JUDGMENT AND ORDER REVERSED
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE BROWN
Dailey and Richman, JJ., concur

Announced November 14, 2019

Lee N. Sternal, P.C., Lee N. Sternal, Pueblo, Colorado, for Plaintiffs-Appellants

Morgan Rider Riter Tsai, P.C., Tory D. Riter, Denver, Colorado, for Defendant-Appellee

¶ 1     In this consolidated action, plaintiffs, Richard Morley and

Connie Morley, appeal the district court's entry of summary

judgment and its order awarding costs in favor of defendant, United

Services Automobile Association (USAA).

¶ 2     Applying the unambiguous definition of "surface water"

articulated in *Heller v. Fire Insurance Exchange*, 800 P.2d 1006,

1008 (Colo. 1990), we distinguish this case from *Martinez v.*

*American Family Mutual Insurance Co.*, 2017 COA 15, and conclude

that when precipitation falls or leaks into the insured's dwelling

through holes in a roof damaged by hail (or some other covered

peril), it does not fall within the plain meaning of the term "surface

water" because it was never water "lying or flowing naturally on the

earth's surface."  Therefore, we reverse the entry of summary

judgment and award of costs and remand to the district court for

further proceedings.

## I.     Background

¶ 3     The Morleys purchased a home in Colorado that they used as

a vacation property and visited, on average, four times a year.  They

allege that in early June 2015, a severe hailstorm damaged the flat

roof of the home, which allowed rainwater to leak through the roof, causing damage to the interior.

¶ 4    At the time, USAA insured the home under an all-risk property insurance policy (the Policy). Upon being notified of the claim, USAA retained an independent insurance adjuster to inspect the Morleys' home and estimate the cost to repair the damage. Based on the estimate, USAA approved and paid for a full roof replacement. USAA also sent a settlement letter to the Morleys and authorized an additional payment to repair the interior water damage that had been identified by the adjuster.

¶ 5    However, in March 2016, the Morleys told USAA that, while performing repairs, their contractor had found additional water damage to the interior of the home. The contractor removed drywall, carpet, cabinets, and insulation, which significantly increased the scope and cost of the repairs. USAA denied the majority of the Morleys' claim for additional interior damage, but did not cite the surface water exclusion in the Policy as a reason for the denial.

¶ 6    The Morleys filed suit, asserting breach of contract and bad faith claims based on USAA's failure to pay the additional claim for

interior water damage.  USAA moved for summary judgment, arguing, in relevant part, that even if the damage to the interior of the home was caused by rainwater that had accumulated on and then penetrated the roof, under *Martinez*, the Morleys' claims were barred by a surface water exclusion in the Policy.  The district court agreed and granted the motion.  It also awarded USAA $23,533.91 in costs as the prevailing party under C.R.C.P. 54(d).  The Morleys appeal.

## II.    Analysis

¶ 7      The Morleys contend that the district court erred by granting USAA's motion for summary judgment because (1) the surface water exclusion in the Policy does not apply and (2) USAA waived its right to rely on the surface water exclusion.  Because we conclude that the district court erred by granting summary judgment based on the plain language of the surface water exclusion, we need not address waiver.[1]

---

[1] Having concluded that the surface water exclusion barred coverage, the district court further concluded that "waiver . . . may not be employed to bring within the policy risks not covered by its terms or risks expressly excluded therefrom."  *See Empire Cas. Co. v. St. Paul Fire & Marine Ins. Co.,* 764 P.2d 1191, 1198 (Colo. 1988);

¶ 8    USAA contends that, even if the surface water exclusion does not bar coverage, we may affirm on the alternative ground that the claims are precluded because the Morleys violated the Policy's fraud clause.  Because we conclude that material disputes of fact exist as to whether the Morleys breached the fraud clause, we cannot affirm on this alternative ground.

¶ 9    For these reasons, we reverse the order entering summary judgment and the award of costs and remand to the district court for further proceedings.

### A.    The District Court Erred by Entering Summary Judgment Based on the Surface Water Exclusion

¶ 10    We understand the Morleys to argue that the surface water exclusion in the Policy does not preclude their claims because (1) based on the Policy's plain language and Colorado case law, water seeping through a storm-damaged roof is not "surface water"; (2) even if the water on the roof was "surface water," it lost that character when it was diverted by the roof structure; and (3) the

---

*Hartford Live Stock Ins. Co. v. Phillips*, 150 Colo. 349, 352, 372 P.2d 740, 742 (1962).

surface water exclusion is ambiguous and extrinsic evidence confirms that it does not apply in this case.

### 1. Preservation

¶ 11    USAA contends that several of the Morleys' arguments are unpreserved and are being raised for the first time on appeal. Recall that USAA's primary argument in its motion for summary judgment was that the surface water exclusion precluded coverage because all of the interior damage to the Morleys' home was caused by surface water. In their response to the motion for summary judgment, the Morleys argued that "[m]aterial questions of fact do exist over whether the water which entered plaintiffs' home from the roof . . . really can be said to have been 'surface water.'"

¶ 12    The district court entered summary judgment based on its interpretation of the surface water exclusion in the Policy and its application of Colorado case law. In so doing, it said that "[t]he parties agree that the damage was caused by rainwater/hail penetrating the roof of the home." Based on that fact, the court concluded, as a matter of law, that the damage to the interior of the Morleys' home was caused by surface water and that the surface water exclusion in the Policy barred their recovery.

5

¶ 13    Thus, the dispositive issues before the district court were the meaning of the surface water exclusion in the Policy and whether the water that caused the damage to the interior of the Morleys' home was "surface water" such that the surface water exclusion applied.  The Morleys' argument on appeal based on the plain language of the policy is preserved.  *See Berra v. Springer & Steinberg, P.C.*, 251 P.3d 567, 570 (Colo. App. 2010) ("[T]o preserve the issue for appeal all that was needed was that the issue be brought to the attention of the trial court and that the court be given an opportunity to rule on it.").[2]

2.    Standard of Review and Applicable Law

¶ 14    We review the entry of summary judgment de novo.  *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 246 P.3d 651, 657 (Colo. 2011).  Summary judgment is appropriate where the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law.  C.R.C.P. 56(c); *Cotter Corp. v. Am. Empire Surplus*

---

[2] Because we resolve this appeal based on the plain, unambiguous language of the Policy, whether the Morleys preserved their alternative arguments is irrelevant.

*Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004). For purposes of summary judgment, a "material fact" is one that will affect the outcome of the case. *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 853 (Colo. App. 2007). We afford all favorable inferences that may be drawn from the undisputed facts to the nonmoving party, and we resolve all doubts as to the existence of a triable issue of fact against the moving party. *Cotter Corp.*, 90 P.3d at 819.

¶ 15 An insurance policy is a contract and its meaning is a question of law that we review de novo. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). We construe an insurance policy according to well-settled principles of contract interpretation. *Id.* In interpreting a contract, we give effect to the intent and reasonable expectations of the parties. *Sachs v. Am. Family Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010). We read the provisions of a policy as a whole, construing the policy so that all provisions are harmonious and none are rendered meaningless. *Martinez*, ¶ 8.

¶ 16 We enforce an insurance policy as written unless the relevant policy language is ambiguous. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005). Policy language is ambiguous

if it is susceptible on its face to more than one reasonable interpretation. *Id.* Mere disagreement between the parties about the meaning of a term in a policy does not create an ambiguity. *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680 (Colo. 1989).

¶ 17 An unambiguous limitation or exclusion in an insurance policy must be enforced as written. *Bolejack v. Travelers Ins. Co.*, 64 P.3d 939, 940 (Colo. App. 2003). But the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract. *Colo. Intergovernmental Risk Sharing Agency v. Northfield Ins. Co.*, 207 P.3d 839, 842 (Colo. App. 2008).

### 3. Relevant Policy Language

¶ 18 The Policy is an all-risk policy designed to cover a wide range of damages to the Morleys' property unless coverage for a particular type of loss is expressly excluded. The policy provides the following coverage: "We insure against 'sudden and accidental' direct physical loss to [the dwelling] unless excluded in SECTION I – LOSSES WE DO NOT COVER."[3]

---

[3] It appears that the parties agree that the damage to the interior of the Morleys' home was damage to the "dwelling" rather than to "personal property." Accordingly, we address only the provisions of the Policy that apply to coverage for the dwelling.

8

¶ 19    As relevant here, USAA relied on the surface water exclusion as the basis for its motion for summary judgment.  This exclusion provides as follows:

> We do not insure for loss or damage consisting of, caused directly or indirectly by . . .
>
> . . . .
>
> c.  Water damage arising from, caused by or resulting from human or animal forces, any act of nature, or any other source.  Water damage means damage caused by or consisting of:
>
> (1)  Flood, *surface water*, waves, tidal water, storm surge, tsunami, any overflow of a body of water, or spray from any of these, whether or not driven by wind.

(Emphasis added.)[4]

### 4.    Discussion

¶ 20    This appeal requires us to interpret the term "surface water" in the Policy.  If the water that caused the damage to the interior of the Morleys' home was surface water, the surface water exclusion

---

[4] The Policy also contains an "anti-concurrent" clause, which precludes coverage even if the loss is caused by a combination of a covered cause, event, or peril and an excluded one.  Although USAA raised the anti-concurrent clause during oral argument as additional grounds to affirm, it did not rely on it as a basis for summary judgment, so we do not address it.

applies to bar coverage and the district court properly granted summary judgment in favor of USAA. If the water was not surface water, or if there remains a dispute of fact as to whether the water was surface water, the district court's entry of summary judgment was erroneous.

¶ 21    The Colorado Supreme Court defined "surface water" in *Heller*, 800 P.2d at 1008. In *Heller*, the interior of the plaintiffs' property was damaged by runoff from melted snow that had been diverted onto the plaintiffs' property by man-made trenches that were fifteen feet long, three feet wide, six inches deep, and lined. *Id.* at 1007. The court interpreted a similar surface water exclusion in an all-risk policy. Although the term "surface water" was not defined in the policy, the court concluded that the term unambiguously means

> water from melted snow, falling rain, or rising springs, lying or flowing naturally on the earth's surface, not gathering into or forming any more definite body of water than a mere bog, swamp, slough, or marsh, and lost by percolation, evaporation, or natural drainage. Surface water is distinguished from the water of a natural stream, lake, or pond, is not of a substantial or permanent existence, has no banks, and follows no defined course.

*Id.* at 1008-09 (footnotes omitted).

¶ 22    Applying this definition, the court reasoned that, although the runoff from the melted snow was originally surface water, it lost that character when it was diverted by the trenches because the trenches were defined channels that prevented percolation, evaporation, or natural drainage. *Id.* at 1009. Thus, the court concluded that the surface water exclusion did not apply and the plaintiffs' loss was covered by their insurance policy. *Id.*

¶ 23    We are bound to apply the definition of "surface water" articulated by the supreme court in *Heller*. *See In re Estate of Ramstetter*, 2016 COA 81, ¶ 40. Thus, we conclude that the term "surface water" is not ambiguous, and we reject the Morleys' arguments to the contrary. Still, we must apply the unambiguous term "surface water" to the facts of this case, which are significantly different from those in *Heller*.

¶ 24    USAA contends that the precipitation that leaked through the Morleys' storm-damaged roof constitutes surface water. In support of this argument, USAA relies heavily on *Martinez*, where a division of this court evaluated a similar surface water exclusion in an all-risk insurance policy.

¶ 25    In *Martinez*, the plaintiff alleged that his basement was damaged when rainwater collected on top of a large amount of hail at the base of basement window wells and then overflowed into the basement windows, causing substantial damage to the interior of the plaintiff's property. *Martinez*, ¶ 3. The insurer denied the plaintiff's claims because it concluded the damage was caused by surface water and, therefore, was expressly excluded from coverage under the surface water exclusion. *Id.* at ¶ 4. The trial court agreed and granted the insurer's motion for summary judgment. *Id.* at ¶ 6.

¶ 26    On appeal, the plaintiff argued, in relevant part, that the surface water exclusion did not apply because the precipitation that caused the damage first landed on the roof, then flowed directly into the window wells. According to the plaintiff, because the water was never lying or flowing naturally on the earth's surface, it was not surface water. *Id.* at ¶ 31.

¶ 27    The division rejected this argument, concluding that even if the precipitation first fell on the roof and then flowed directly into the window wells, it fit "well within *Heller*'s definition of surface water." *Id.* at ¶¶ 32, 35. The division reasoned that the term

"earth's surface" was not as narrow as the plaintiff argued, but instead that "the rooftop of [the plaintiff's] home [was] a mere continuation of 'the earth's surface.'" *Id.* at ¶¶ 33-35. Because the roof could be considered part of the "earth's surface," the division concluded that the precipitation that fell on that roof and then flowed directly into the window wells was surface water. *Id.* at ¶ 35. Thus, the surface water exclusion in the insurance policy barred coverage for the plaintiff's damage. *Id.* at ¶ 52.

¶ 28  In reaching its conclusion, the *Martinez* division surveyed other jurisdictions and found that "the overwhelming majority of jurisdictions that have addressed this issue . . . view precipitation collecting on a roof or other man-made structures as 'surface water.'" *Id.* at ¶ 34. But the cases cited in *Martinez* are factually distinguishable. Most involved paved or man-made surfaces at or just inches above ground level. *See Cameron v. USAA Prop. & Cas. Ins. Co.,* 733 A.2d 965 (D.C. 1999) (relying on *Heller* and finding surface water included water that first landed on a patio and then flowed into a basement); *Fenmode, Inc. v. Aetna Cas. & Sur. Co. of Hartford,* 6 N.W.2d 479, 480-81 (Mich. 1942) (concluding that water overflowing from a paved surface was surface water); *Crocker v. Am.*

13

*Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 936 (Tex. App. 2007) (finding that surface water is not limited to rain falling on dirt, and that water draining off of a raised patio was surface water). And none involved water penetrating through the paved or man-made surface to cause damage; rather, all involved water flowing off the man-made surface and ultimately causing damage some other way. Importantly, none involved precipitation accumulating on and penetrating an (allegedly) hail-damaged roof to cause interior damage.

¶ 29    Indeed, the only case cited in *Martinez* that involved water falling on a roof is *Bringhurst v. O'Donnell*, 124 A. 795 (Del. Ch. 1924), which interpreted the term "surface water" in a "reservation of use . . . 'for the purpose of carrying off the surface water and cleaning the cesspools on said lots and for no other purpose.'" *Id.* at 797. *Bringhurst* did not involve a surface water exclusion in an insurance policy. Still, the water at issue there flowed off the roof and into the alley that was the subject of the easement.

¶ 30    USAA also relies on *Oak Hill Investment IV LLC v. State Farm Fire & Casualty Co.*, No. 15-CV-1996, 2017 WL 4286779 (N.D. Ohio Sept. 27, 2017), *aff'd*, 737 F. App'x 722 (6th Cir. 2018), in arguing

that the surface water exclusion precludes the Morleys' claims.  Not only is that case not binding on us, but it is also factually distinguishable.  In *Oak Hill*, precipitation pooled on a roof until it overflowed an air conditioner unit and entered the insured's building; the water did not penetrate the roof through holes created by a covered event, such as is alleged here.  Further, the court applied Ohio's definition of "surface water," which is markedly different from the definition articulated in *Heller* and has been interpreted broadly by Ohio courts.  Accordingly, we do not find *Oak Hill* persuasive here.

¶ 31    We agree that man-made surfaces, such as roofs or patios, can intercept precipitation and generate surface water.  Indeed, it would be nonsensical to categorically exclude precipitation falling on a roof from the definition of surface water simply because the roof temporarily detours the water from its natural flow down grade toward the earth's surface and its eventual manifestation as surface water.  By contrast, when precipitation falls or leaks into the insured's dwelling through holes in a roof damaged by hail (or some other covered peril) — rather than running off the roof and behaving as one would expect water intercepted by a roof to behave — it does

15

not fall within the plain meaning of the term "surface water" because it was never water "lying or flowing naturally on the earth's surface" (even if the roof is considered an extension of the "earth's surface"). *Heller*, 800 P.2d at 1008.

¶ 32    Here, the district court stated that the interior damage to the Morleys' home was caused by "rainwater/hail penetrating the roof of the home." Based on that characterization, we disagree with the district court's conclusion, as a matter of law, that the water causing the damage to the interior of the Morleys' home was "surface water" triggering the surface water exclusion in the Policy.

¶ 33    In reaching this conclusion, we reject USAA's contention that *Martinez* stands for the proposition that the moment water falling from the sky touches a roof or other man-made surface it becomes "surface water," such that any damage subsequently caused by that water is excluded from coverage. We do not read *Martinez* to declare such a broad and bright line.[5] Nor would such a

---

[5] To the extent that the division in *Martinez* intended to declare such a broad proposition, we are not bound to agree. *See Roque v. Allstate Ins. Co.*, 2012 COA 10, ¶ 20 ("[W]e are not bound to follow decisions of other divisions of this court.").

declaration be consistent with the parties' reasonable expectations or the binding definition of "surface water" articulated in *Heller*.

¶ 34 Instead, whether the water that caused damage to the interior of the Morleys' home was "surface water" is a more nuanced question. And, notwithstanding the district court's statement that "[t]he parties agree that the damage was caused by rainwater/hail penetrating the roof of the home," precisely how the water entered the home is unclear based on the record before us on appeal.

¶ 35 In their complaint, the Morleys allege that the interior damage was caused by precipitation entering directly through holes in the roof caused by the hail damage. If that allegation is true, the water that caused the damage in this case was never "lying or flowing naturally" on the roof and was not surface water. For purposes of summary judgment, USAA acknowledged the Morleys' characterization, but did not concede its accuracy. Instead, USAA argued that it was entitled to summary judgment even if the cause of the interior water damage was as the Morleys alleged. Thus, it appears material facts are in dispute that preclude entry of summary judgment.

17

¶ 36 Because we disagree with the district court's conclusion that, as a matter of law, the Morleys' claims are barred by the surface water exclusion in the Policy, we conclude that the court erred by entering summary judgment in favor of USAA.

B. There are Disputes of Material Fact about Whether the Policy's Fraud Clause Precludes the Morleys' Claims

¶ 37 USAA contends that, because the Morleys failed to disclose material facts, their claims are also barred by the Policy's fraud clause. USAA raised this argument in its motion for summary judgment as an alternative ground for judgment in its favor on the Morleys' claims, but the district court did not address it. Even so, we may affirm a trial court's ruling based on any grounds that are supported by the record. *See Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107 P.3d 402, 406 (Colo. App. 2004).

¶ 38 The Policy provides, in relevant part, that USAA may

> deny coverage as to the interest of all
> "insureds" if you or any other "insured",
> whether before or after an "occurrence" or loss
> under this policy has:
>
> (a) concealed or misrepresented any material
> fact or circumstance.

18

¶ 39    USAA contends that in October 2014, almost eight months before the Morleys reported their claim to USAA, the Morleys had a roofing company inspect and estimate the replacement cost for their roof.  According to USAA, the Morleys failed to disclose the inspection report, which revealed that the roof had several rotten areas and would need to be replaced.  USAA contends this information was material to the claim and the Morleys' failure to disclose it allows USAA to deny coverage.

¶ 40    The Morleys dispute that they concealed or misrepresented material facts.  Instead, the Morleys contend that the inspection did not reveal that the roof needed immediate replacement or that water was leaking into the home.

¶ 41    Although the interpretation of an insurance policy is a matter of law we review de novo, *Huizar*, 52 P.3d at 819, genuine disputes of fact exist regarding the content and materiality of the inspection report and the Morleys' intent in failing to disclose it.  The district court did not resolve these factual disputes, nor should it have, when entering summary judgment.  And, we may not resolve such disputes for the first time on appeal.  Thus, we cannot affirm the district court's entry of summary judgment based on USAA's

alternative argument that the fraud exemption precludes the Morleys' claims.

## III.   Conclusion

¶ 42     We reverse the district court's entry of summary judgment and its award of costs in favor of USAA, and we remand to the district court for further proceedings consistent with this opinion.

JUDGE DAILEY and JUDGE RICHMAN concur.