The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 1, 2021

**2021COA89**

**No. 20CA0720,** ***Barnes v. State Farm Mutual Automobile Insurance Company*** **— Civil Procedure — Failure to State a Claim Upon Which Relief Can be Granted — Motion to Strike — Consolidation of Defenses in Motion; Insurance — Motor Vehicles — Uninsured/Underinsured**

In this declaratory judgment action, a division of the court of appeals considers whether a district court erred by allowing a defendant to file a C.R.C.P. 12(b)(5) motion to dismiss after it had already filed a separate C.R.C.P. 12(f) motion to strike. The division reasons that, although C.R.C.P. 12(g) requires consolidation of C.R.C.P. 12 motions, any error by the district court in considering the defendant's successive motion was harmless under the circumstances presented.

The division also considers plaintiff's contention that the district court erred by dismissing her complaint because she

asserted a plausible claim that a form prepared by the defendant insurance company contained a false or misleading representation regarding uninsured and underinsured motorist coverage. The division rejects plaintiff's contention that, by disclosing that such coverage follows the insured person rather than the insured vehicle, the defendant became legally obligated to further disclose information about "stacking" coverage. The division affirms the district court's judgment dismissing the complaint.

Court of Appeals No. 20CA0720
City and County of Denver District Court No. 19CV32024
Honorable Eric M. Johnson, Judge

Julie Barnes,

Plaintiff-Appellant,

v.

State Farm Mutual Automobile Insurance Company, an Illinois Corporation,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE BROWN
Navarro and Casebolt*, JJ., concur

Announced July 1, 2021

John L. Springer, Aurora, Colorado, for Plaintiff-Appellant

Patterson Ripplinger, P.C., Franklin D. Patterson, Karl A. Chambers, Greenwood Village, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2020.

¶ 1     In this declaratory judgment action, Julie Barnes appeals the district court's judgment dismissing her complaint against State Farm Mutual Automobile Insurance Company (State Farm) for failure to state a claim upon which relief can be granted.

¶ 2     Barnes first contends that the district court erred by allowing State Farm to file a C.R.C.P. 12(b)(5) motion to dismiss after it had already filed a separate C.R.C.P. 12(f) motion to strike because C.R.C.P. 12(g) requires consolidation of C.R.C.P. 12 motions. Although we agree that the court erred, under the circumstances discussed below, we conclude the error was harmless.

¶ 3     Barnes next contends that the district court erred by dismissing her complaint because she asserted a plausible claim that a State Farm form contained a false or misleading representation — a "half-truth" — regarding uninsured and underinsured motorist (UM) coverage. Specifically, she contends that, by disclosing that UM coverage follows the insured person rather than the insured vehicle, *see* § 10-4-609(1)(a), C.R.S. 2020, State Farm became legally obligated to further disclose that an insured who rejects UM coverage on one of multiple policies loses the ability to "stack" available UM coverage. We reject this

contention and affirm the district court's judgment dismissing her complaint.

## I. Background

¶ 4     Colorado law requires that an insurer offer UM coverage for each automobile liability policy that it issues. § 10-4-609(1)(a). An insured may reject such coverage in writing. *Id.*

¶ 5     State Farm issued Barnes two automobile liability insurance policies — one for a 2006 Honda and one for a 1990 Geo. After Barnes visited her insurance agent to discuss her automobile coverage, State Farm sent Barnes a form titled "Colorado Automobile Coverages Acknowledgment of Coverage Selection or Rejection" (UM Rejection Form). Barnes signed the UM Rejection Form, rejecting UM coverage on the Geo policy.

¶ 6     The two policies were in effect when Barnes sustained serious bodily injuries in a car accident caused by another driver. Because her damages exceeded the amount she recovered from the at-fault driver, Barnes sought the $100,000 limit of UM coverage under the Honda policy and $70,000 (of what she believed was a $100,000 limit) of UM coverage under the Geo policy. State Farm paid Barnes $100,000, the maximum amount of UM coverage available under

2

the Honda policy; but because she had rejected UM coverage on the Geo policy, State Farm declined to pay her anything more. Had Barnes not rejected UM coverage on the Geo policy, she alleges that she would have been able to "stack" the UM coverage, meaning that she would have been entitled to UM coverage on both policies, resulting in a total of $200,000 in available UM coverage.

¶ 7 Barnes filed a declaratory judgment action against State Farm, seeking a declaration that the UM Rejection Form was invalid or unenforceable. After Barnes filed an amended complaint, State Farm filed a C.R.C.P. 12(f) motion to strike certain paragraphs of the amended complaint or, alternatively, to require Barnes to state facts to support the statements contained in those paragraphs. The district court denied the motion to strike.

¶ 8 State Farm then filed a C.R.C.P. 12(b)(5) motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Approximately two weeks later, State Farm filed an answer to Barnes' amended complaint. Barnes opposed the motion to dismiss. After conducting a hearing, the district court granted the motion and dismissed the amended complaint.

## II.    Analysis

### A.    Successive C.R.C.P. 12 Motions

¶ 9    Barnes first contends that the district court erred by allowing State Farm to file a C.R.C.P. 12(b)(5) motion to dismiss after it had already filed a separate C.R.C.P. 12(f) motion to strike. She argues that, pursuant to C.R.C.P. 12(g), the court should have disallowed the motion to dismiss because it was not joined with the earlier-filed motion to strike. We perceive no reversible error.

### 1.    Standard of Review

¶ 10    We interpret the Colorado Rules of Civil Procedure de novo, *DCP Midstream, LP v. Anadarko Petroleum Corp.*, 2013 CO 36, ¶ 24, according to their commonly understood and accepted meanings, *Antero Res. Corp. v. Strudley*, 2015 CO 26, ¶ 15. We do not add words or provisions to a rule. *Id.* But we construe the rules liberally "to effectuate their objective to secure the just, speedy, and inexpensive determination of every case and their truth-seeking purpose." *Id.* (quoting *DCP Midstream*, ¶ 24); *see also* C.R.C.P. 1.

¶ 11    Because the Colorado Rules of Civil Procedure are patterned on the Federal Rules of Civil Procedure, "we may also look to the

federal rules and decisions for guidance." *Garrigan v. Bowen*, 243 P.3d 231, 235 (Colo. 2010).

¶ 12     On appeal, we disregard any error or defect in the proceedings that did not affect the substantial rights of the parties. C.R.C.P. 61. An error affects the substantial rights of the parties if it "substantially influenced the outcome of the case or impaired the basic fairness of the trial itself." *Bernache v. Brown*, 2020 COA 106, ¶ 26 (quoting *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24).

### 2.     Applicable Law

¶ 13     C.R.C.P. 12(b) provides that every defense to a claim shall be asserted in the responsive pleading, except that certain defenses, including failure to state a claim upon which relief can be granted, "may at the option of the pleader be made by separate motion." C.R.C.P. 12(c) provides that, "[a]fter the pleadings are closed . . . , any party may move for judgment on the pleadings." And C.R.C.P. 12(f) authorizes a party to move to strike "any redundant, immaterial, impertinent, or scandalous matter" from any pleading.

¶ 14     C.R.C.P. 12(g) states as follows:

> A party who makes a motion under this Rule
> may join with it any other motions herein
> provided for and then available to that party.
> If a party makes a motion under this Rule but
> omits therefrom any defense or objection then
> available to that party which this Rule permits
> to be raised by motion, that party shall not
> thereafter make a motion based on the defense
> or objection so omitted, except a motion as
> provided in section (h)(2) of this Rule on any of
> the grounds there stated.

C.R.C.P. 12(h)(2), in turn, states as follows:

> A defense of failure to state a claim upon
> which relief can be granted . . . may be made
> in any pleading permitted or ordered under
> Rule 7(a), or by motion for judgment on the
> pleadings, or at the trial on the merits.

### 3. Any Error by the District Court in Considering State Farm's Motion to Dismiss Was Harmless

¶ 15 Although we disagree with the district court's interpretation of C.R.C.P. 12(g), we conclude that any error by the district court in considering State Farm's second C.R.C.P. 12 motion was harmless.

¶ 16 In rejecting Barnes' contention that State Farm was not permitted to file a separate C.R.C.P. 12(b)(5) motion after it had already filed a C.R.C.P. 12(f) motion, the district court explained,

> [I]f you're going to bring a motion under *one
> subparagraph* of [Rule] 12, then you need to
> bring everything that fits under that *one
> subparagraph*, but that does not mean you

6

have to bring all Rule 12 motions. You can,
but you do not have to. So, I disagree with
that interpretation of Rule 12, and I will not
disallow [State Farm's] motion under
[Rule]12(b)(5) for failure to state a claim just
because previously there had been a . . .
motion to strike under [Rule] 12(f).

(Emphasis added.)

¶ 17     We read the rule differently. C.R.C.P. 12(g) plainly states that a party who makes a motion "under this Rule" but omits a then-available defense or objection allowed to be raised by motion "shall not thereafter" make a motion based on the omitted defense or objection. Section (g) nowhere states that only defenses and objections allowable under "one subparagraph" must be brought in a single motion. Instead, section (g) generally prohibits serial C.R.C.P. 12 motions regardless of which section or subsection permits the defense or objection being asserted; it requires consolidation of all C.R.C.P. 12 motions. C.R.C.P. 12(g); *see also* Fed. R. Civ. P. 12(g)(2); *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 701 (10th Cir. 2014).

¶ 18     But C.R.C.P. 12(g) contains an express exception to the general rule for "a motion as provided in section (h)(2) of this Rule on any of the grounds there stated." And section (h)(2) permits a

7

party to assert the defense of failure to state a claim upon which relief can be granted, among other ways, "by motion for judgment on the pleadings." C.R.C.P. 12(h)(2). Thus, even if a party made an earlier C.R.C.P. 12 motion, section (g) does not preclude it from making a subsequent motion for judgment on the pleadings asserting the defense of failure to state a claim. C.R.C.P. 12(g), (h)(2); *see also BSLNI, Inc. v. Russ T. Diamonds, Inc.*, 2012 COA 214, ¶ 11.

¶ 19    Indeed, if a defendant files a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim after it has filed its answer, the court should treat the motion as a C.R.C.P. 12(c) motion for judgment on the pleadings. *See City of Aurora v. 1405 Hotel, LLC*, 2016 COA 52, ¶ 16 n.3 ("Technically, 'a post-answer [C.R.C.P. 12(b)(5)] motion is untimely and . . . some other vehicle, such as a motion for judgment on the pleadings or for summary judgment, must be used to challenge the plaintiff's failure to state a claim for relief.'" (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 408 (3d ed. 2004))); *BSLNI, Inc.*, ¶ 11 ("[W]hen filed after an answer, a defendant's motion to dismiss for failure to state a claim upon which relief can be granted is

properly addressed as a motion for judgment on the pleadings under C.R.C.P. 12(c)."); *Shaw v. City of Colorado Springs*, 683 P.2d 385, 387 (Colo. App. 1984) (affirming trial court's ruling on defendant's "motion to dismiss" although motion "more accurately constituted a motion for judgment on the pleadings").

¶ 20     Barnes argues, however, that the court could not have treated State Farm's motion as one for judgment on the pleadings because State Farm filed the motion before it filed its answer. It is true that C.R.C.P. 12(c) permits a motion for judgment on the pleadings only "[a]fter the pleadings are closed." *See 1405 Hotel, LLC*, ¶ 16 n.3 (noting that trial court could not have considered defendant's motion under C.R.C.P. 12(c) where plaintiffs had not responded to the defendant's counterclaims when the motion was filed). But before Barnes even responded to the motion, State Farm filed its answer and the pleadings closed, effectively curing any procedural defect caused by the timing of the motion relative to the answer. And, because the standard for resolving a motion for judgment on the pleadings is consistent with that employed in resolving a motion to dismiss, *BSLNI, Inc.*, ¶ 13, requiring State Farm to file a new motion for judgment on the pleadings after it filed its answer would

have served no practical purpose, *see Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377, 384 (3d Cir. 2011). It also would have been antithetical to the purpose of the civil rules "to secure the just, speedy, and inexpensive determination of every action." C.R.C.P. 1(a). *See also In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("Denying late-filed [Fed. R. Civ. P.] 12(b)(6) [the federal counterpart to C.R.C.P. 12(b)(5)] motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."), *aff'd sub nom. Apple Inc. v. Pepper*, 587 U.S. ___, 138 S. Ct. 2647 (2018).

¶ 21     To be clear, there may be circumstances in which a trial court's erroneous consideration of serial C.R.C.P. 12 motions may affect the substantial rights of the parties and warrant reversal. But in the circumstances presented here, any technical error by the district court in considering State Farm's successive motion to dismiss was harmless. *See Albers*, 771 F.3d at 704 (concluding any error by district court in considering the defendant's second motion to dismiss was harmless because the same argument could have been presented in a motion for judgment on the pleadings); *Walzer*,

10

447 F. App'x at 384 (any technical error in entertaining the defendants' successive motion to dismiss was harmless).

### B. Dismissal of the Complaint

¶ 22    Barnes next contends that the district court erred by dismissing her complaint. We disagree.

### 1. Standard of Review and Applicable Law

¶ 23    Whether we treat State Farm's motion as a motion to dismiss or as a motion for judgment on the pleadings, we review the district court's order de novo, employing the same standards as the district court. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶¶ 16-17. The standard we use to review a motion for judgment on the pleadings is consistent with the standard for a motion to dismiss. *BSLNI, Inc.*, ¶ 13.

¶ 24    In evaluating a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim, we accept as true the factual allegations in the complaint and, viewing them in the light most favorable to the plaintiff, determine whether the complaint states a plausible claim for relief. *Andres Trucking Co. v. United Fire & Cas. Co.*, 2018 COA 144, ¶ 14 (citing *Warne v. Hall*, 2016 CO 50, ¶¶ 9, 24). "A claim has facial plausibility when the plaintiff pleads factual content that

11

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We need not accept as true legal conclusions masquerading as factual allegations. *Id.*; *Warne*, ¶ 9.

¶ 25 Similarly, in evaluating a C.R.C.P. 12(c) motion for judgment on the pleadings, we construe the allegations of the pleadings strictly against the movant, consider the factual allegations in the complaint as true, and grant the motion only if the matter can be determined on the pleadings. *Melat, Pressman & Higbie*, ¶ 17.

2. The District Court Properly Dismissed the Amended Complaint

¶ 26 The UM Rejection Form Barnes signed provides, in relevant part, as follows:

> Uninsured Motor Vehicle Coverage provides protection for persons insured who are legally entitled to recover damages for bodily injury, sickness, or disease, including death, from owners or operators of either uninsured motor vehicles or underinsured motor vehicles. The named insured may reject such coverage by submitting written rejection to the insurer.
>
> Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident in which the selected

> Uninsured Motor Vehicle Coverage is payable for that bodily injury, sickness, or disease, including death. The described vehicle on that one policy need not be involved in the accident for Underinsured Motor Vehicle Coverage to apply.

¶ 27 In her amended complaint, Barnes sought a declaration that the UM Rejection Form was invalid or unenforceable because the information contained in the second paragraph quoted above constituted a false or misleading representation.[1] Barnes concedes that the second paragraph is a truthful statement regarding how UM coverage works. But she contends that, once State Farm communicated the information in the second paragraph, it had an affirmative duty to also disclose "the Stacking Information," which she defined in her amended complaint as

> the opportunity that an insured has to aggregate or combine the UM coverage limits on two or more separate automobile or motor vehicle liability insurance policies for the purpose of increasing the total amount of available UM coverage that will apply to any accident where an insured sustains bodily injury as the result of the fault of the driver or operator of an uninsured or underinsured

---

[1] Barnes also sought a declaration that the UM Rejection Form was void as against public policy, but she did not allege any facts in support of that requested declaration and she does not raise the issue on appeal.

> motor vehicle and the primary policy provides inadequate coverage to fully compensate the insured for his or her bodily injury.

She contends that State Farm was required to advise her that, by rejecting UM coverage on a policy, she loses the ability to stack her UM coverage and reduces the total amount of UM coverage available to her. In the absence of the Stacking Information, Barnes argues, the second paragraph creates a false or misleading impression — a "half-truth" — that if an insured rejects UM coverage on all but one of her multiple policies, she will be left with the same amount of UM coverage but at a reduced cost.

¶ 28    To establish a claim for fraudulent misrepresentation, a plaintiff must prove that (1) the defendant made a fraudulent misrepresentation of material fact; (2) the plaintiff relied on the misrepresentation; (3) the plaintiff had a right to rely on or was justified in relying on the misrepresentation; and (4) the plaintiff's reliance resulted in damages. *Rocky Mountain Expl., Inc. v. Davis Graham & Stubbs LLP*, 2018 CO 54, ¶ 53.

¶ 29    Relying on the Restatement (Second) of Torts § 529 (Am. Law Inst. 1977), Barnes contends that the second paragraph of the UM Rejection Form constitutes a fraudulent misrepresentation because

14

it is a "half-truth." Section 529 of the Restatement provides: "A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation."

¶ 30   To establish a claim for fraudulent concealment, a plaintiff must prove (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *Rocky Mountain Expl., Inc.*, ¶ 56.

¶ 31   To succeed on a claim for fraudulent concealment or nondisclosure, a plaintiff must show that the defendant had a duty to disclose the material information. *Id.* Whether the defendant has a duty to disclose a particular fact is a question of law we decide de novo. *Poly Trucking, Inc. v. Concentra Health Servs., Inc.*, 93 P.3d 561, 564 (Colo. App. 2004).

¶ 32    Generally, a defendant has a duty to disclose material facts that in equity or good conscience should be disclosed. *Id.* A party to a business transaction has a duty to exercise reasonable care to disclose to the other party, as relevant here, "matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading." Restatement (Second) of Torts § 551(2)(b); *see also Poly Trucking*, 93 P.3d at 564; *Berger v. Sec. Pac. Info. Sys., Inc.*, 795 P.2d 1380, 1383 (Colo. App. 1990) ("[A] party has a duty to disclose if he has stated facts that he knows will create a false impression unless other facts are disclosed.").

¶ 33    It is unclear to us whether the claim underlying Barnes' request for declaratory judgment is a claim for fraudulent misrepresentation or fraudulent concealment. Either way, the dispositive question is the same: Is the second paragraph of the UM Rejection Form misleading in the absence of information about an insured's ability to stack UM coverage on multiple policies? If the answer is no, then State Farm did not make a fraudulent misrepresentation of material fact (resulting in Barnes' failure to state a claim for fraudulent misrepresentation) and did not have a

duty to disclose additional information (resulting in Barnes' failure to state a claim for fraudulent concealment). For two reasons, we answer this question in the negative.

¶ 34 First, the second paragraph of the UM Rejection Form is a neutral, accurate statement of the law regarding how UM coverage applies. *See* § 10-4-609(1)(a) (requiring insurers to give customers an option to purchase UM coverage "for the protection of persons"); *see also DeHerrera v. Sentry Ins. Co.*, 30 P.3d 167, 176 (Colo. 2001) ("We hold that the language of the UM/UIM statute and the purpose of that statute require that UM/UIM insurance apply to an insured person when injured by a financially irresponsible motorist, irrespective of the vehicle the injured insured occupies at the time of injury."); *Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 172 (Colo. App. 2009) ("When one vehicle is insured in a single-vehicle policy, the UM/UIM coverage applies to the insured person who is injured 'irrespective of the vehicle the injured insured occupies at the time of the injury.'" (quoting *DeHerrera*, 30 P.3d at 176)); *Briggs v. Am. Nat'l Prop. & Cas. Co.*, 209 P.3d 1181, 1184 (Colo. App. 2009) (UM coverage follows the person "in *any* vehicle they occupy when injured, no matter who owns the vehicle or whether it is insured on

the owner's policy."). The second paragraph is not ambiguous or misleading regarding its topic.

¶ 35 Second, the Stacking Information that Barnes argues State Farm should have disclosed is unrelated to the subject covered by the second paragraph, so the second paragraph does not amount to a "half-truth" — either about its subject or about stacking. An insurance policy is a contract, which should be interpreted consistently with the well-settled principles of contractual interpretation. *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819 (Colo. 2002). Our goal is to give effect to the contracting parties' intentions and reasonable expectations. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004). To ascertain the parties' intent, we look to the plain language of the policy and give the words their plain, generally accepted meanings, unless the policy indicates that another meaning is intended. *Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2019 CO 65, ¶ 32.

¶ 36 As noted, the second paragraph addresses the unique nature of UM coverage following the person insured in any vehicle they occupy when injured. This is a distinct concept from "stacking," which is defined by section 10-4-402(3.5), C.R.S. 2020, as

18

"aggregating, combining, multiplying, or pyramiding limits of separate policies providing uninsured and underinsured motorist coverage as provided in section 10-4-609."

¶ 37    In her amended complaint, Barnes alleged that the second paragraph,

> by informing the named insured that UM coverage on one policy will apply to any accident and that the vehicle described in the policy need not be involved in the accident, without also informing the named insured about the Stacking Information and the overall UM coverage that would be lost to an insured if the UM Rejection Form was signed, created the false and/or materially misleading impression that no benefit would be derived from having UM coverage on more than one of multiple policies and that by having UM coverage on one of multiple policies any insured would have the same total amount of available UM coverage, which would apply to any accident, but at a reduced cost.

¶ 38    But the second paragraph says nothing about the benefits or detriments of selecting or rejecting UM coverage on multiple policies.  It does not suggest that, by rejecting UM coverage on one policy, the insured would be entitled to the same total amount of UM coverage at a reduced cost (i.e., without paying a premium).  Barnes' interpretation of the second paragraph is not reasonable.

*See Weaver v. State Farm Mut. Auto. Ins. Co.*, Civ. A. No. 17-cv-02208-MEH, 2018 WL 1522610, *4 (D. Colo. Mar. 27, 2018) (unpublished opinion) (reasoning that the same language at issue here "does *not* disclose the positive or negative consequences of rejecting UM coverage," but instead "accurately describes . . . the nature of UM insurance"); *see also Huizar*, 52 P.3d at 819 ("[S]trained constructions should be avoided.").

¶ 39     The only Colorado case to address section 529 of the Restatement (Second) of Torts, the section on which Barnes relies most heavily, is *Eckley v. Colorado Real Estate Commission*, 752 P.2d 68 (Colo. 1988). In *Eckley*, a disbursement agreement for the sale of a lounge authorized the real estate broker who drafted the agreement to use funds to pay "for the whiskey, wine and beer," but the funds were actually used to bring the premises at issue "into compliance." *Id.* at 72. So, "the fact that payments were made . . . that were of a different nature from those listed in the agreement made the disbursement agreement misleading." *Id.* at 77. The subject of the representation and the subject of the omission were the same — categories of items for which funds would be used.

20

Under such circumstances, the partial or incomplete representation regarding disbursement of funds was misleading.

¶ 40     Similarly, in *Kannavos v. Annino*, 247 N.E.2d 708, 713 (Mass. 1969), the court held that a seller had made a deceptive disclosure when it advertised to investors that houses were being rented to the public as multi-dwelling properties without revealing that multi-dwelling use for houses actually violated the local zoning ordinance. Thus, the subject of the representation and the subject of the omission were the same — use of the buildings.  The court clarified that if the seller had been silent regarding how the property could be used, it would not have made any misrepresentation.  *Id.* at 711.

¶ 41     Likewise, in *Junius Construction Co. v. Cohen*, 178 N.E. 672, 674 (N.Y. 1931), the court held that, because a seller had truthfully informed a prospective buyer that certain streets would bisect the tract of land for sale, the seller could not "stop halfway" by failing to mention that another street also was projected to do the same.  The court clarified that the seller was not under a duty to mention the projected street at all.  *Id.*  But because the seller disclosed certain projected streets without mentioning a similar street, its representation was misleading.  *Id.*  Again, the subject of the

representation and the subject of the omission were the same — projected streets affecting the property.

¶ 42 Here, in contrast to the cases cited by Barnes, the subject of State Farm's representation and the subject of the alleged omission were different. State Farm did not make any representations about stacking. Instead, the UM Rejection Form explained that UM coverage follows the person and not the vehicle. If State Farm had failed to disclose something related to that subject, such as a circumstance under which the UM coverage would *not* follow the person, Barnes might have validly claimed misrepresentation. But whether Barnes is entitled to stack UM coverage on multiple policies in the event of an accident is a different concept from the personal nature of UM coverage. The fact that stacking is possible does nothing to undermine the content of the second paragraph of the UM Rejection Form. What State Farm included in the UM Rejection Form is qualitatively different from the Stacking Information Barnes claimed it should have disclosed.

¶ 43 So, even assuming the truth of the allegations in the amended complaint, Barnes has failed to state a plausible claim for relief. She failed to allege facts that would allow us to draw the reasonable

inference that the second paragraph of the UM Rejection Form was a "half-truth" amounting to a fraudulent misrepresentation, resulting in her failure to state a claim for fraudulent misrepresentation. And she failed to allege facts establishing that State Farm had a legal duty to disclose additional information with respect to the second paragraph of the UM Rejection Form, resulting in her failure to state a claim for fraudulent concealment. The district court did not err by dismissing her complaint.[2]

### III.   Conclusion

¶ 44     We affirm the district court's judgment dismissing Barnes' amended complaint.

JUDGE NAVARRO and JUDGE CASEBOLT concur.

---

[2] Barnes made six interrelated arguments challenging the district court's order dismissing her complaint. Because we have affirmed on the basis that Barnes failed to allege facts to support at least one element of either claim underlying her request for declaratory judgment, we need not address her remaining contentions.